IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:25-CV-589-M

| | |
|---|---|
| TOREY COLEY,<br><br>Plaintiff/Claimant,<br><br>v.<br><br>FRANK J. BISIGNANO,<br>*Commissioner of Social Security*,<br><br>Defendant. | MEMORANDUM AND RECOMMENDATION |

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-12, -14, -15]. Claimant Torey Coley ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). Having carefully reviewed the administrative record and the briefs submitted by the parties, it is recommended that the final decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on January 6, 2023, alleging disability beginning February 6, 2022. (R. 39, 197–203). The claim was denied initially and upon reconsideration. (R. 39, 88–104). A hearing before an Administrative Law Judge ("ALJ") was held on August 23, 2024, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 39, 60–87). On October 8, 2024, the ALJ issued a decision denying Claimant's request for benefits, (R. 36–59), and on July 22, 2025, the Appeals Council denied review, (R. 6–11). Claimant then filed a complaint in this court seeking

review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.* When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 42). Next, the ALJ determined Claimant had the severe impairments of minimal degenerative changes of the lumbosacral spine, with disc bulging and mild to moderate spondylosis at L4-S1; lumbar spondylosis; and obesity (5'9", 307–316 pounds), and the non-severe impairments of diabetes mellitus; gastroesophageal

reflux disease; obstructive sleep apnea; seasonal allergic rhinitis; hypertension; sciatica; and bilateral carpal tunnel syndrome. (R. 42–43). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 44–45). Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding that he had the ability to perform medium work[1] with the following restrictions:

> The claimant can occasionally climb ladders, ropes, and scaffolds. He can frequently climb ramps or stairs, balance, stoop, crouch, kneel and crawl. He should avoid concentrated, meaning more than occasional, exposure to unprotected heights.

(R. 45–52). In making this assessment, the ALJ found that Claimant's statements about his limitations were not entirely consistent with the medical evidence and other evidence in the record. (R. 46). At step four, the ALJ concluded Claimant was capable of performing his past relevant work as a corrections officer, and, alternatively, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that he can perform. (R. 52–53).

## V. DISCUSSION

Claimant contends the ALJ erred in determining his RFC in three ways: first, by failing to account for his need to use a cane; second, by failing to perform a function-by-function assessment of his ability to stand or walk; and third, by improperly considering the opinions of his treating orthopedist, Dr. Miller, and a consultative examiner, Marcia Love, PA-C. Pl.'s Br. [DE-12] at 3–12; Pl.'s Resp. [DE-15]. The Commissioner counters that the ALJ sufficiently

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, they can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

explained why the use of a cane was not included in the RFC, and substantial evidence supports the ALJ's evaluation of Dr. Miller's and PA Love's medical opinions. Def.'s Br. [DE-14] at 7–20.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also* *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

## A. Claimant's Use of a Cane

"The requirement to use a hand-held assistive device may . . . impact . . . [an] individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." *Daniel v. Berryhill*, No. 5:17-cv-338, 2018 WL 4134844, at *5 (E.D.N.C. July 13, 2018), *adopted by*, 2018 WL 4113340 (E.D.N.C. Aug. 29, 2018). Although Social Security Ruling ("SSR") 96-9p addresses the use of a handheld assistive device by individuals capable of less than a full range of sedentary work, "district courts within the Fourth Circuit have consistently referred to [SSR 96-9p] for direction when a claimant alleges that the ALJ failed to properly consider the claimant's use of a hand-held assistive device in the RFC analysis." *Id.* (citing *Lovejoy v. Berryhill*, No. 2:17-cv-02921, 2018 WL 2729240, *14 (S.D.W. Va. 2 May 2018), *adopted by*, 2018 WL 2728032 (S.D.W. Va. June 5, 2018)). SSR 96-9p provides that an "RFC assessment must include a narrative that shows the presence and degree of any specific limitations and restrictions, as well as an explanation of how the evidence in file was considered in the assessment." SSR 96-9p, 1996 WL 374185, *5 (July 2, 1996). An ALJ must consider the impact of a "medically required hand-held assistive device." *Id.* at *7. For an ALJ to find that a handheld assistive device is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Id.*

At step 3, when considering whether an impairment met or equaled a listing, the ALJ found that an assistive device was not medically necessary, explaining that "[w]hile the claimant used a cane at the consultative physical medicine exam in June 2023, he had no neurological

focal deficits, no edema or muscle atrophy in his extremities, and intact coordination." (R. 44, 530). In the RFC analysis, the ALJ again noted that Claimant used a cane at his June 20, 2023 consultative examination and added that he had an antalgic gait with the right hip, his lumbar spine had decreased range of motion and lumbosacral tenderness, and straight leg raise testing was positive. (R. 49, 531). The ALJ also found "not persuasive" the consultative examiner's opinion that Claimant required a cane to ambulate, (R. 532), explaining as follows:

> While the claimant used a cane here, he had no neurological focal deficits, no edema or muscle atrophy in his extremities, and intact coordination on exam. The finding of 4/5 strength in the bilateral lower extremities is not consistent with physical exam findings at the neurological and orthopedic office visits. The opinion that an assistive device is needed for ambulation is inconsistent with a neurological exam in September 2022, where the claimant demonstrated a normal gait with no assistive device used, normal 5/5 motor strength, and only mild sensory reduction along the lateral side of both legs (Ex. 2F/2). The opinion is also inconsistent with the physical exam findings at the orthopedic office visit on October 4, 2023, and as recently as May 22, 2024, where the claimant has demonstrated a normal gait, normal motor strength in the bilateral lower extremities, and no sensory deficits in either lower extremity (Ex. 14F/3; 13F/5).

(R. 51).

Claimant argues that the ALJ did not adequately consider his use of a cane when evaluating the RFC and points to evidence in the record that he uses a cane "prn for back pain" and he had an abnormal or slow and careful gait, positive straight leg raises, and chronic, radiating pain on multiple occasions. Pl.'s Br. [DE-12] at 4–5. The fact that Claimant can "point to other evidence that supports h[is] position does not render the ALJ's decision unsupported," *Allen v. Kijakazi*, No. 2:20-CV-89-M, 2022 WL 3655488, at *9 (E.D.N.C. Aug. 4, 2022) (quoting *Lilley v. Saul*, No. 4:19-CV-93-RJ, 2020 WL 3884429, at *11 (E.D.N.C. July 9, 2020), *report and recommendation adopted*, 2022 WL 3655217 (E.D.N.C. Aug. 24, 2022)),, and the ALJ does not have to discuss every piece of evidence in the record, *Reid v. Comm'r of Soc. Sec.*,

769 F.3d 861, 865 (4th Cir. 2014). The ALJ did acknowledge that Claimant experienced back pain and, at times, had an abnormal gait and positive straight leg raise test. (R. 46–49). Specifically, the ALJ noted that Claimant reported back pain in September 2022, in June, October, November, and December 2023, and in May 2024; abnormal gait in June and November 2023; and had a positive straight leg raise test in June, October, November, and December 2023 and in May 2024. *Id.* But the ALJ also cited evidence from two of the most recent orthopedic treatment notes in October 2023 and May 2024, indicating that Claimant demonstrated normal gait, normal motor strength in the bilateral lower extremities, and no sensory deficits in either lower extremity. (R. 847–48, 884). It is also noteworthy that while Plaintiff cites several pages in the record reflecting notes of antalgic or otherwise abnormal gait, some of those are from the same visit or date, (R. 402, 404, and 406 (Jan. 10, 2022) and 734, 738, 740, 741 (Aug. 3, 2023)), or were expressly considered by the ALJ (R. 530, 789); the January 17, 2024 record Claimant cites as evidence that he uses a cane "prn" or "as needed," fully reads, "Equipment currently used: None (Cane prn for back pain.)," (R. 760), which indicates he was not currently using a cane; and Claimant indicated he did not use a cane on both an August 3, 2023 physical therapy questionnaire, (R. 737), and the April 20, 2024 adult function report, (R. 281).

The ALJ did not cherry-pick the evidence but rather weighed contradictory evidence in the record, and it is not the court's role to second guess the ALJ's decision. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("[I]n reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ.") (citation omitted). Accordingly, the ALJ's determination that a cane was not medically necessary was sufficiently explained and supported

by substantial evidence.

### B. Opinion Evidence

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). The applicable regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) "other factors that tend to support or contradict a medical opinion." *Id.* § 404.1520c(c)(1)–(5). The most important factors are supportability and consistency, and the decision must contain an explanation of how those factors were considered. *Id.* § 404.1520c(a) & (b)(2).

Notwithstanding, "there is no requirement that an ALJ use any 'magic words' in making findings regarding consistency and supportability." *Tyrun W. v. O'Malley*, No. 1:23CV719, 2024 WL 4349241, at *5 (M.D.N.C. Sept. 30, 2024) (quoting *Weidner v. Kijakazi*, No. 20-1250-MN,

2022 WL 610702, at *12 (D. Del. Feb. 1, 2022) (finding the fact that the ALJ did not use "consistency" or "supportability" is not sufficient to remand where the "ALJ plainly considered the consistency of the medical opinions with the evidence of record")). "Thus, the ALJ's failure to specify which factor, i.e., supportability, consistency, or otherwise, was eroded by contrary evidence is inapposite, so long as he (1) analyzed the relevant evidence when considering the persuasiveness of the medical opinion and (2) made his analysis of that evidence clear enough for the court to meaningfully review it." *Id.*

**a. Dr. Miller's Opinion**

Dr. Miller provided an opinion letter dated June 30, 2024, which stated as follows:

> Torey Coley has been my patient for 3 years. His primary complaint is pain in the lumbar spine that radiates into both lower extremities. This corresponds to MRI studies that show spinal stenosis at the L4-L5 and L5-S1 levels with nerve root compression. On the positive side, Mr. Coley has no motor deficit nor any problems with incontinence.
>
> Mr. Coley has tried physical therapy and has had epidural steroid injections. Unfortunately, the injections did not help him. I offered him surgery, which would have consisted of a laminectomy, but Mr. Coley declined. There was nothing more I could offer him and so I referred him to pain management. I would be happy to see him again if he reconsiders his decision.
>
> Functionally, he retains the ability to do sedentary work. He could sit for 6 hours out of an 8-hour day, and he could walk and/or stand for 2 out of 8 hours. I would limit his lifting to 10 pounds occasionally. I am aware that Mr. Coley is a diabetic and that he has carpal tunnel syndrome but the limitations I have given him relate only to his lumbar spine.

(R. 894).

The ALJ found the opinions "not persuasive" because they were "not supported by the objective physical exam findings at orthopedic office visits on October 4, 2023, and November 20, 2023, and December 28, 2023, and May 22, 2024, and are not consistent with Dr. Miller's observing that imaging of the lumbar spine did not show clear-cut evidence of nerve root

compression." (R. 52). The ALJ specifically noted that Dr. Miller's treatment notes indicated straight leg raise testing was positive on the right, but all other findings were within normal limits; the lumbosacral spine was not tender to palpation; both legs had normal 5/5 motor strength; there were no sensory deficits in either lower extremity; he had a normal gait and normal coordination, with no indication that any assistive device was used; the lumbar spine had normal flexion, extension, lateral flexion, and rotation; and musculoskeletal range of motion and cervical back range of motion were both normal. *Id.*

Claimant acknowledges the factors considered by the ALJ were appropriate but argues that the ALJ improperly rejected Dr. Miller's opinion by relying on "select normal findings in the record, again without reconciling the abnormal findings." Pl.'s Br. [DE-12] at 11. As explained above, the ALJ did not simply cherry-pick the evidence but rather acknowledged that Claimant experienced back pain and, at times, had an abnormal gait and positive straight leg raise tests. (R. 46–49). At step 2, the ALJ explained that "sciatica has not been shown to have more than a minimal effect on the claimant's ability to engage in work-related activities," citing multiple treatment notes indicating Claimant had a normal gait, did not use a cane, and had normal coordination and motor strength. (R. 43). In the RFC analysis, prior to weighing Dr. Miller's opinion, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of his symptoms to be not fully consistent with the record, citing 2022 imaging showing minimal degenerative changes and some disc bulging with mild to moderate spondylosis at L4-S1 and that he had been conservatively treated with diclofenac medication, physical therapy and a TENS unit, with no need for surgical intervention indicated. (R. 46). The ALJ also discussed a December 2023 MRI of the lumbar spine that demonstrated an L5-S1 rightward asymmetric broad disc extrusion that may contact the traversing right S1 nerve root and an L4-5central disc

protrusion without clear neural impingement but also noted that Dr. Miller said the MRI did not show clear cut evidence of nerve root compression or listhesis. (R. 48).

The ALJ weighed the conflicting evidence regarding the effects of Claimant's back pain on the RFC and was not required to repeat all the evidence again when analyzing Dr. Miller's opinion. *See Tanya B. v. Bisignano*, No. 4:25CV19, 2026 WL 837111, at *3 (E.D. Va. Mar. 26, 2026) ("The ALJ was not required to repeat all of this evidence in the same paragraph as the discussion of Dr. Barrios's findings in order to conclude that Dr. Barrios's opinions were only 'somewhat consistent' with the evidence discussed in detail in the preceding pages.") (citing *Angela L. A. v. Kijakazi*, No. 122cvl003, 2023 WL 6806002, at *11 (E.D. Va. July 6, 2023) (citing *McCartney v. Apfel*, 28 F. App'x 277, 279 (4th Cir. 2002)), *report and recommendation adopted sub nom. Andrew v. Kijakazi*, 2023 WL 6295124 (E.D. Va. Sept. 27, 2023)); *Tranter v. Kijakazi*, No. 1:20-CV-280-MOC, 2021 WL 5018699, at *4 (W.D.N.C. Oct. 28, 2021) ("By ignoring the ALJ's discussion of the evidence that precedes the opinion evaluation, Plaintiff erroneously assumes that the ALJ's analysis examining the evidence does not extend to his opinion evaluation. It is well established the ALJ is not required to repeat his analysis with respect to every finding and sub-finding in the decision."). Accordingly, the ALJ did not err in evaluating Dr. Miller's opinion.

**b. PA Love's Opinion**

On June 30, 2023, PA Love conducted a consultative examination and concluded, in relevant part, that Claimant had moderate limitations in prolonged standing and walking, lifting, carrying, and postural activities.[2] (R. 532). The ALJ found the part of the opinion regarding the moderate limitations was "not persuasive" because it was "vague and an overestimate of the

[2] The ALJ's rejection of PA Love's finding regarding Claimant's need to use a cane is addressed above in the context of the ALJ's failure to include the need for a cane in the RFC.

claimant's physical limitations based on a one-time snapshot of functioning." (R. 51). The ALJ explained that the limitations were "not consistent with the physical exam findings made by an examining neurologist and examining orthopedists." (R. 51).

Claimant first argues the ALJ selectively considered only normal findings, Pl.'s Br. [DE-12] at 10–11, but for the reasons explained above the court rejects that argument.

Claimant next argues the ALJ's finding that the opinions were vague is unreasonable. The ALJ did not err in finding the use of "moderate" limitation as applied to prolonged standing and walking, lifting, carrying, and postural activities to be vague, because the term is not defined in the opinion and "the regulations do not provide a definition of the term 'moderate' that explains how that term should apply to a claimant's physical RFC, i.e., his or her maximum ability to engage in exertional activities such as lifting, carrying, pushing, pulling, sitting, standing, and walking, and non-exertional activities such as postural and manipulative movements." *Rosalyn R. P. v. Bisignano*, No. 1:25CV725, 2026 WL 1864019, at *6 (M.D.N.C. June 29, 2026) (citing 20 C.F.R. § 404.1545) (finding the ALJ did not err in rejecting PA Love's opinion based on the use of the term "moderate" to describe limitations in ability to engage in exertional activities because it was undefined).

Lastly, relying on *Oakes v. Kijakazi*, 70 F.4th 207 (4th Cir. 2023), Claimant argues the ALJ could have easily "fixed" the vagueness problem by seeking clarification of PA Love's opinion. Pl.'s Br. [DE-12] at 11–12. In *Oakes*, the Fourth Circuit found that to the extent the consultative examiner's ambulatory-device recommendation was ambiguous, the medical record was incomplete and the ALJ should have "take[n] additional actions" to seek clarification. 70 F.4th at 213 (quoting 20 C.F.R. § 404.1520b(b)). In so finding, the court also noted the medical record in the *Oakes* case was "extremely sparse," and the ALJ had ordered the consultative

examination because the claimant lacked insurance and the financial ability to seek medical treatment that would document his conditions and support his disability claim. *Id.* Thus, the court concluded that "when an administratively ordered consultative examiner's opinion contains what ought to be an easily clarified ambiguity on a key issue, it logically follows that an ALJ must engage in a simple § 404.1520b(b)(2) inquiry." *Id.* at 214.

Here, the ALJ not only found the opinion vague, but also that is was "an overestimate of the claimant's physical limitations based on a one-time snapshot of functioning." (R. 51). The ALJ, in discussing PA Love's physical examination of Claimant, noted that strength was 4-/5 to 4/5 in the bilateral lower extremities; range of motion in the thoracolumbar spine was decreased in forward flexion, extension, lateral flexion, and rotation; there was lumbar paraspinal muscle tenderness; and straight leg raise testing was positive bilaterally, but the ALJ considered the longitudinal record, as compared with PA Love's one-tine examination, i.e., the consistency factor, which included contrary findings. (R. 51, 435, 434–36, 845–50, 879–85 847–48, 884). This distinguishes the instant case from *Oakes*, because here there was a history of treatment with neurology and orthopedics that documented Claimant's impairments and limitations, and despite noting PA Love's opinion was vague in its use of the term "moderate," the ALJ was still able to evaluate the opinion based on the supportability and consistency factors. *See Pickard v. Comm'r of Soc. Sec. Admin.*, No. 3:25-CV-00121-MEO-WCM, 2026 WL 962412, at *4 (W.D.N.C. Feb. 26, 2026) (distinguishing *Oakes* because "while the ALJ did refer to Dr. Christensen's wording as being 'somewhat vague,' the ALJ was able to consider the substance of Dr. Christensen's opinion regarding Plaintiff's functional limitations and was able to determine the persuasiveness of that opinion by reference to other mental health treatment records."), *report and recommendation adopted sub nom. Pickard v. Comm'r of Soc. Sec.*, 2026 WL 961437

(W.D.N.C. Apr. 8, 2026). Accordingly, the ALJ did not err in evaluating PA Love's opinion.

**C. Function-By-Function Analysis – Standing and Walking**

As explained above, "the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

The ALJ determined Claimant could perform a reduced range of medium work, which requires standing or walking for a total of about 6 hours in an 8-hour workday. S.S.R. 83-10, 1983 WL 31251 at *6 (Jan. 1, 1983). Claimant contends the ALJ erred by not performing an explicit function-by-function analysis of Claimant's ability to stand and walk in light of Claimant's "extensive problems that might be expected to impact [his] exertional function." Pl.'s Br. [DE-12] at 6. Here, however, the lack of a function-by-function analysis does not frustrate meaningful review.

The ALJ discussed Claimant's testimony regarding his back pain, including that he did

physical therapy and 3–4 weeks of chiropractic treatment, he utilized a TENS unit, he has not had back surgery, the pain radiates to his legs, and he takes diclonfenac and has not requested stronger medication. (R. 45). Claimant also testified that he could not walk 100 yards or stand for up to two hours due to pain. (R. 79). In finding Claimant's statements about the intensity, persistence, and limiting effects of his symptoms to be not fully consistent with the record, the ALJ cited 2022 imaging showing minimal degenerative changes and some disc bulging with mild to moderate spondylosis at L4-S1 and that he had been conservatively treated with no need for surgical intervention indicated.[3] (R. 46); *see Dunn v. Colvin*, 607 F. App'x 264, 275 (4th Cir. June 1, 2015) ("[I]f all that the claimant needs is conservative treatment, it is reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is."); *Richardson v. Colvin*, No. 4:14-CV-125-FL, 2015 WL 5725546, at *6 (E.D.N.C. Aug. 11, 2015) (concluding that conservative treatment lends little support to claims of debilitating symptoms), *report and recommendation adopted*, 2015 WL 5737613 (E.D.N.C. Sept. 30, 2015). The ALJ also noted that when Claimant went to the neurologist he was advised to go to a pain specialist, but he had not done so,[4] (R. 49, 527), and Dr. Miller also referred Claimant to pain management, (R. 48–49, 894), but there are no subsequent treatment records from pain management, despite the ALJ leaving the record open for the submission of any missing records, (R. 63–64). Although

[3] Dr. Miller's treatment note does not mention a surgical option but rather states that there were "no further treatment options for him at this time" and recommended pain management. (R. 885). Dr. Miller's June 30, 2024 letter, drafted by Claimant's counsel after interviewing Dr. Miller, states that he offered Claimant surgery, specifically a laminectomy, but that he declined, so Dr. Miller recommended pain management. (R. 894).

[4] The ALJ must "consider and address reasons for not pursuing treatment that are pertinent to an individual's case," including whether a claimant is unable to afford treatment and lacks access to free or low-cost medical services. S.S.R. 16-3p, 2016 WL 1119029, at *10 (March 16, 2016); *see Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) ("It flies in the face of patent purposes of the SSA to deny benefits to someone because he is too poor to obtain medical treatment that may help him"). Here, the ALJ noted that Claimant had not gone to pain management despite receiving long-term disability benefits of $16,741 in 2022 and $28,000 in 2023, (R. 49), and Claimant did not offer any reasons, financial or otherwise, for not following this recommendation.

Claimant denied improvement from conservative treatments, (R. 880), his failure to pursue the further recommended treatment of pain management was an appropriate consideration in assessing his statements about the limiting effects of his symptoms. *See Tranter v. Kijakazi*, No. 1:20-CV-280-MOC, 2021 WL 5018699, at *6 (W.D.N.C. Oct. 28, 2021) (citing *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (finding the inconsistency between the allegations and treatment sought is probative); 20 C.F.R. § 404.1530(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . .")).

The ALJ next discussed Claimant's treatment history with neurology and orthopedics for his back pain from 2022 through May 2024, noting his reports of pain and examination findings that were largely normal, although he at times had an abnormal gait and positive straight leg raise tests. (R. 46–49). The ALJ highlighted Claimant's September 2022 new patient neurology visit where he reported low back pain that radiates down the lateral side of his right thigh "occasionally" and complained of "intermittent" burning pain in the left leg; on examination, there was only a "mild" sensory reduction observed along the lateral side of both legs; he had a normal gait and normal strength; neurology did not believe an EMG/NCV was needed; and conservative treatment, e.g., continuing exercises and stretches learned in physical therapy, weight loss, and a referral to pain management with a possible trial of gabapentin, was recommended. (R. 49, 434–36). The ALJ also discussed a December 2023 MRI of the lumbar spine that demonstrated an L5-S1 rightward asymmetric broad disc extrusion that may contact the traversing right S1 nerve root and an L4-5central disc protrusion without clear neural impingement but also noted that Dr. Miller said the MRI did not show clear cut evidence of nerve root compression or listhesis. (R. 48–50, 884–85).

The ALJ lastly considered the opinion evidence. Both state agency medical consultants

opined that Claimant could perform medium work, and the ALJ found that portion of their opinions to be persuasive because it was supported by objective exam findings across treatment records. (R. 51, 90–93, 98–102); *see Owen v. Colvin*, No. 7:14-CV-00255-FL, 2015 WL 13735428, at *4 (E.D.N.C. Dec. 2, 2015) ("Given the consistency of the opinions of Drs. Parrish and Gardner with the medical record, ALJ Christ was entitled to reply upon them as substantial evidence of Owen's RFC.") (citing *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986) (where the opinions of the state agency medical consultants are consistent with the other evidence of record, the ALJ is entitled to rely upon the opinions in determining a claimant's RFC)), *report and recommendation adopted*, 2016 WL 259709 (E.D.N.C. Jan. 21, 2016). And, as explained above, the ALJ found the opinions of Dr. Miller and PA Love that Claimant was more limited were not persuasive, and that determination is supported by substantial evidence.

The ALJ considered Claimant's complaints of chronic back pain but found that it was not as disabling as alleged based on the evidence found in the treatment notes indicating Claimant did not require the use of a cane, pursued only conservative treatment, failed to utilize recommended pain management, had only mild to moderate deficits on imaging, and had largely normal examination findings over the course of the longitudinal record. *See Johnson v. O'Malley*, No. 2:23-CV-59-M, 2024 WL 4942497, at *6 (E.D.N.C. Oct. 22, 2024) (citing *Corbin v. Kijakazi*, No. 2:20-CV-00060-M, 2022 WL 990487, at *4 (E.D.N.C. Mar. 31, 2022) (finding ALJ did not err in evaluation of claimant's pain where the ALJ did not require that subjective statements be supported with medical evidence but rather found that the claimant's statements were in some respects inconsistent with the medical and other evidence, including repeated findings of normal muscle strength, gait, tone, station, and balance); *Patterson v. Kijakazi*, No. 1:20CV1030, 2022 WL 103884, at *6 (M.D.N.C. Jan. 10, 2022) (finding no error where the ALJ

considered a claimant's reports of pain in light of the effectiveness of the claimant's treatment and ability to ambulate), *report and recommendation adopted*, 2022 WL 904467 (M.D.N.C. Feb. 24, 2022), *aff'd*, No. 22-1325, 2023 WL 2136367 (4th Cir. Feb. 21, 2023)), *report and recommendation adopted*, 2024 WL 4941403 (E.D.N.C. Dec. 2, 2024). The ALJ's RFC analysis is sufficient for the court to trace her reasoning in finding Claimant had the ability stand or walk that is consistent with medium exertion work, and the ALJ's decision is supported by substantial evidence.

## VI. CONCLUSION

For the reasons stated above, it is recommended that the final decision of the Commissioner be affirmed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 31, 2024** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described**

**above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the 17 day of August, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge